IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **8:05CR253** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| **DANNY J. GOTTSCH,** | ) | |
| **JULIE A. DUNBAR,** | ) | |
| | ) | |
| Defendants, | ) | |

This matter is before the court on the motions to suppress by defendant Danny J. Gottsch (Gottsch) (Filing No. 36) and by defendant Julie A. Dunbar (Dunbar) (Filing No. 28 as amended by Filing No. 39). Both defendants are charged in an Indictment along with co-defendant Candace M. Hohlfeld (Hohlfeld) with a conspiracy to manufacture in excess of 500 grams of methamphetamine in violation of 21 U.S.C. § 846 (Count I). All three defendants are charged in Count II with possession of pseudoephedrine to manufacture methamphetamine in violation of 21 U.S.C. § 841(c)(2), in Count III with the attempt to manufacture in excess of five grams of methamphetamine in violation if 21 U.S.C. § 841(a)(1), and in Count IV with the possession of equipment and chemicals to manufacture methamphetamine in violation of 21 U.S.C. § 843(a)(6). Gottsch is charged alone in Count V with the possession of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)).

Gottsch and Dunbar seek to suppress statements they made to law enforcement officers on May 13-14, 2005. The court held a hearing on the motions on October 7, 2005. The court heard the testimony of Deputy Sheriffs Robert Jones (Deputy Jones) and Greg Kelly (Deputy Kelly) of the Douglas County Sheriff's Office (DCSO), and defendants Gottsch and Dunbar. The court also received in evidence a Rights Advisory Form for Gottsch (Exhibit 1) and a Rights Advisory Form for Dunbar (Exhibit 2). A transcript (TR.) of the hearing was prepared and filed on October 13, 2005 (Filing No. 46). There was no post-hearing briefing.

## FINDINGS OF FACT

Prior to May 13, 2005, officers of the DSCO narcotics bureau had received numerous complaints of illegal narcotics activity and a possible clandestine methamphetamine laboratory occurring at 28405 West Maple Road in Douglas County, Nebraska (TR. 5-6). As a result, the DCSO was conducting surveillance at that address (TR. 6). On May 13, 2005, officers observed Dunbar leaving 28405 West Maple Road in a black Buick Regal which was registered to her (TR. 6). Dunbar was followed by DCSO deputies to a commercial area in Fremont, Nebraska (TR. 6). Dunbar parked in a parking lot on East 23rd Street near a Blockbuster Video store (TR. 7). Dunbar parked next to a red Jeep Wrangler, got out of her vehicle, and entered the passenger side of the Jeep Wrangler where she conversed with a white male in the driver's seat of the Jeep Wrangler (TR. 7).

Deputies Jones and Kelly believed a narcotics transaction was occurring (TR. 7). Deputies Jones and Kelly, attired in plain clothes, approached the parked Jeep Wrangler displaying their badges and identification and announced they were with the Sheriff's Department (TR. 7). The driver of the Jeep Wrangler, James Stifle (Stifle), all of a sudden raised his hands and stated "You caught us!" (TR. 8). Both Stifle and Dunbar were asked to step out of the Jeep Wrangler, which they did (TR. 8). As Deputy Jones was patting down Stiffle, Stifle said "the drugs are inside the vehicle." (TR. 8). Stifle was then placed in one of the DCSO undercover vehicles and Dunbar was placed in another such vehicle (TR. 8). Amounts of methamphetamine were found on Dunbar and she was placed under arrest (TR. 8).

Dunbar was placed in Deputy Kelly's undercover vehicle at the parking lot in Fremont (TR. 8). Deputy Jones was in the driver's seat and Dunbar was in the passenger seat (TR. 17). Deputy Kelly was present for a short time next to the vehicle's open window (TR. 17; 55). Deputy Jones advised Dunbar that she was under arrest after methamphetamine was found on her person (TR. 9). Deputy Jones advised Dunbar of her **Miranda** rights by means of a Right Advisory Form (Exhibit 1; TR. 9). After being advised of each of her **Miranda** rights, Dunbar stated that she understood each of the rights and agreed to talk with Deputy Jones and signed the Rights Advisory Form (TR. 10-11). Dunbar's demeanor was calm and she

appeared coherent (TR. 11). No threats or promises were made to get her to provide a statement (TR. 14). Dunbar provided Deputy Jones with a statement as to her drug trafficking activities with Gottsch and Hohlfeld (TR. 12-13). The interview lasted approximately thirty minutes (TR. 17).

Dunbar testified that, when advised of her rights by Deputy Jones, she asked him how she could have an attorney present when she and Deputy Jones were sitting in a car (TR. 61). Dunbar testified she believed she had the right to an attorney if she could get one to the scene (TR. 63). Dunbar testified she believed she was going to jail that evening but would not be in jail for very long if she answered questions (TR. 64). Dunbar stated she had not been arrested or interrogated by police prior to this incident (TR. 65). Dunbar testified she was a high school graduate with some additional classes at Metro Community College (TR. 68). Dunbar admitted that if she were to contact an attorney, the questioning in the car by Deputy Jones would cease and that she understood her right to an attorney (TR. 70). Deputy Jones explained to Dunbar that he could make no promises to her and that her cooperation would be made known to the prosecutor (TR. 25). Deputy Jones advised Dunbar that the case could go federal and that there was substantial jail time involved (TR. 25).

Based upon information obtained from Dunbar concerning ongoing methamphetamine manufacturing at Gottsch's residence at 28405 Maple Road, a search warrant was obtained and executed at the residence in the early morning hours of May 14, 2005 (TR. 30). Gottsch was present at the time of the execution of the search warrant and he was arrested (TR. 30). After his arrest, Gottsch was interviewed by Deputy Kelly in Deputy Kelly's unmarked county car parked in the residence's driveway (TR. 31). Gottsch was handcuffed and seated in the car when Deputy Kelly advised Gottsch of his *Miranda* rights from a Rights Advisory Form (TR. 32; Exhibit No. 1). Deputy Kelly described Gottsch as calm and coherent (TR. 35). Gottsch responded "yes" to understanding each of his *Miranda* rights and agreed to talk with Deputy Kelly without an attorney present (TR. 35; Exhibit 1). No promises or threats were made to Gottsch in order to get Gottsch to talk with Deputy Kelly (TR. 35-36). Gottsch told Deputy Kelly that Gottsch had been involved with Hohlfeld and Dunbar in cooking and manufacturing methamphetamine in a quantity of about a half an ounce a week for the past

three years (TR. 36). At no time during the interview did Gottsch ask for a lawyer or ask that the interview stop (TR. 37).

Gottsch testified he had consumed about a gram of methamphetamine the evening in which he was arrested (TR. 76). Gottsch testified he was arrested and taken out of the house and seated on a chair with his hands cuffed behind his back for about an hour before Deputy Kelly took him to the car for the interview (TR. 78). Gottsch testified Hohlfeld was living with him at the residence at the time of the search warrant (TR. 78). While Hohlfeld was present right before the raid, Gottsch said Hohlfeld left the residence (TR. 80). Gottsch testified he was concerned for Hohlfeld and asked Deputy Kelly if Gottsch cooperated whether Hohlfeld could be kept out of the problem (TR. 81). Gottsch stated Deputy Kelly said he would do what he could (TR. 81). Gottsch testified he was not advised of his rights until after he told Deputy Kelly everything (TR. 82). Gottsch recalls telling Deputy Kelly that it was a little late to get a lawyer now that Gottsch told Deputy Kelly everything (TR. 83).

To the extent that there are discrepancies in the testimony of Deputies Jones and Kelly with that of Dunbar and Gottsch, the court credits the testimony of Deputies Jones and Kelly. Their testimony was forthright and credible within the circumstances of the evening. The court noted their demeanor while testifying and contrasts such with the demeanor of Dunbar and Gottsch. While Dunbar professes naivete with various matters, the court notes she is an intelligent person and, while not having contact with law enforcement on prior occasions, Dunbar was involved in helping obtain pseudoephedrine to manufacture methamphetamine and then subsequently delivering some of that methamphetamine to others over a three-year period as described by Gottsch. Having been caught red-handed on the evening of May 13, 2005, in delivering methamphetamine in the Jeep Wrangler at the parking lot in Fremont, accounts for her resignation to her "fate" as much as anything that may have been said by Deputy Jones. However, Deputy Jones' version of what occurred in the interview was wholly consistent with the evolving circumstances on the evening of arrest. Gottsch's version of his advice of rights is not credible. The court credits Deputy Kelly's version of the advice of rights in light of all of the circumstances of that evening. The court has no doubt Gottsch was fully

4

aware of his circumstances and gave an account of his drug activities unaffected by any hope of leniency that could come the way of Hohlfeld in this case.

## LEGAL ANALYSIS

The defendants contend the statements they gave to law enforcement officers on May 13, 2005 and May 14, 2005, were involuntary and are inadmissable evidence. Dunbar contends that her will was overborne due to the combination of her naivete and the officer's use of threats and promises. Gottsch argues he was not advised of his *Miranda* rights until after he gave an incriminatory statement to officers. Consequently, Gottsch contends the statement was involuntary.

The touchstone for the admissibility of a defendant's statements is voluntariness. *Brown v. Mississippi*, 297 U.S. 278 (1936). The court must look to the totality of circumstances in determining whether or not the statements were voluntary. *Mincey v. Arizona*, 437 U.S. 385 (1978); *Colorado v. Connelly*, 479 U.S. 157 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). In this case, both Dunbar and Gottsch were advised of their constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). There is no evidence Dunbar or Gottsch did not understand the advice of rights. Even though the defendants were advised of their *Miranda* rights, the court must examine the conduct of the law enforcement officials to determine whether or not there was an overreaching by law enforcement officials amounting to coercive police activity. Coercive police conduct will render a confession inadmissible. *Blackburn v. Alabama*, 361 U.S. 199 (1960). In determining whether a defendant made statements voluntarily, the court must determine if the accused was coerced or his will was overborne and his capacity for self-determination critically impaired. *United States v. Santos-Garcia*, 313 F.3d 1073, 1079 (8th Cir. 2002). The court must consider the totality of the circumstances, including the specific interrogation tactics employed, the details of the interrogation, and the characteristics of the accused. *Schneckloth*, 412 U.S. at 225-26. However, any police questioning has coercive aspects to it simply by reason of the confrontation. **See** *Santos-Garcia*, 313 F.3d at 1079 ("To state the obvious, 'interrogation of a suspect will involve some pressure because its purpose is to

elicit a confession.'"). The police officer is part of the law enforcement system that will cause a charge to be made against a suspect. The questioning by a police officer, while uncomfortable, is not coercive *per se*. **See *Oregon v. Mathiason***, 429 U.S. 492, 495 (1977).

A.   **Dunbar's Statements**

As an initial matter, Dunbar did not invoke her right to have counsel present during questioning. Dunbar's statement about how could she have an attorney present when she and Deputy Jones were sitting in a car, was not a clear and unambiguous request for a lawyer triggering her Fifth Amendment right to counsel. ***Davis v. United States***, 512 U.S. 452, 462 (1994) (holding "Maybe I should talk to a lawyer" is insufficient to trigger Fifth Amendment right to counsel). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer *in light of the circumstances* would have understood only that the suspect *might be invoking* the right to counsel, our precedents do not require the cessation of questioning." *Id.* at 459 (emphasis added). While Dunbar may have preferred the presence of an attorney for questioning under other circumstances, she stated she understood her rights and voluntarily chose to give a statement while with Deputy Jones, rather than to wait to do so at another time and location when counsel could be present. Accordingly, no Fifth Amendment violation prohibits the admission of Dunbar's statements against her.

Dunbar contends that her will was overborne due to the combination of her naivete and the officer's use of threats and promises rendering her statements involuntary under the Fourth Amendment. The court finds the officer's comments about realistic consequences of the crime charged and procedures were not coercive. **See *Santos-Garcia***, 313 F.3d at 1079 (Informing a suspect "in a noncoercive manner of the realistically expected penalties and encouraging [him] to tell the truth is no more than affording [him] the chance to make an informed decision with respect to [his] cooperation with the government."). The officer simply gave Dunbar information to afford her the opportunity to make an informed decision with respect to cooperation. Finally, Dunbar's inexperience with law enforcement does not vitiate her voluntariness. Dunbar's demeanor was calm and she appeared coherent. Dunbar stated to Deputy Jones that she understood her rights. The evidence shows Dunbar made a

6

strategic decision to make a statement on May 13, 2005, rather than doing so only in response to threats or promises made by Deputy Jones. The court finds Dunbar's will was not overborne and she made statements voluntarily. Because Dunbar's statements were knowing and voluntary, the undersigned magistrate judge recommends Dunbar's motion to suppress be denied.

### B. Gottsch's Statements

Since the court finds Gottsch's version of his advice of rights is not credible, the court concludes the statements were made knowingly and voluntarily. Deputy Kelly advised Gottsch of his **Miranda** rights before Gottsch made incriminating statements. Additionally, no threats or promises were made to induce the statements.

Finally, although Gottsch may have ingested methamphetamine the evening before he was arrested, such drug use does not necessarily render his statements involuntary. "[T]he mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary. In each case, '[t]he question is one of mental awareness so that the act of consent was the consensual act of one who knew what he [or she] was doing and had a reasonable appreciation of the nature and significance of his [or her] actions.'" **United States v. Rambo**, 789 F.2d 1289, 1297 (8th Cir. 1986) (consent to search voluntary despite use of cocaine) (internal citations omitted); see **United States v. Gipp**, 147 F.3d 680, 686 (8th Cir. 1998) (consent to search voluntary despite use of marijuana); **United States v. Turner**, 157 F.3d 552, 555-56 (8th Cir. 1998) (knowing and intelligent waiver despite intoxication with PCP); **United States v. Martin**, 28 F.3d 742, 746 (8th Cir. 1994) (consent to search and statements voluntary despite use of methamphetamine). Gottsch was calm and coherent during the interview. Gottsch answered questions and spoke to officers in a manner which indicated he knew what was aware of his circumstances. Because Gottsch's statements were knowing and voluntary, the undersigned magistrate judge recommends Gottsch's motion to suppress be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH BATAILLON that:**

The motions to suppress by defendant Danny J. Gottsch (Filing No. 36) and by defendant Julie A. Dunbar (Filing No. 28 as amended by Filing No. 39) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 17th day of November, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge